MEEHAN *v.* MARION MANOR APARTMENTS.

1. WORKMEN'S COMPENSATION—APARTMENT HOUSE CARETAKER—
ASPHYXIATION IN COURSE OF EMPLOYMENT.
Finding of department of labor and industry that death of apartment house caretaker was accidental and due to asphyxiation from illuminating gas which had escaped from open burner of a kitchen gas stove as he was preparing coffee in basement apartment happened during "the course of" employment *held,* supported by the record in view of the fact that such apartment was furnished "rent free" and that decedent was more or less subject to call to let tenants into building who had forgotten their keys (2 Comp. Laws 1929, § 8417).

2. SAME—ACCIDENTS OUT OF AND IN COURSE OF EMPLOYMENT.
An accident, to be compensable, must be one arising "out of" as well as "in the course of" the employment (2 Comp. Laws 1929, § 8417).

3. SAME—ACCIDENTS—PROXIMATE CAUSE.
To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (2 Comp. Laws 1929, § 8417).

4. SAME—ACCIDENTS—IN COURSE OF EMPLOYMENT.
An accident may occur "in the course of" the employment and not arise "out of" it (2 Comp. Laws 1929, § 8417).

5. SAME—APARTMENT HOUSE CARETAKER—ASPHYXIATION.
Apartment house caretaker who received use of basement apartment as part of his compensation and who was accidentally asphyxiated by illuminating gas which had escaped from open burner of kitchen gas stove in such apartment as he was preparing coffee did not die of an accident arising out of his employment, the risk encountered being entirely divorced therefrom (2 Comp. Laws 1929, § 8417).

6. SAME—ACTS OF A PERSONAL NATURE—APARTMENT FURNISHED
   IN CONSIDERATION OF EMPLOYMENT.
   Acts of a personal nature, usually performed as a part of
   family life, do not become incidental to employment because
   living quarters are furnished the injured person in consid-
   eration of the services performed.

Appeal from Department of Labor and Industry.
Submitted April 7, 1943. (Docket No. 19, Calendar
No. 42,239.) Decided May 18, 1943.

Carrie Meehan presented her claim for compensa-
tion for accidental death of her husband, Frederick
Meehan, against Marion Manor Apartments and the
Maccabees of Detroit, employers, and Hartford Ac-
cident & Indemnity Company, insurer. Award to
defendants. Plaintiff appeals. Affirmed.

*Charfoos & Gussin* and *Ben L. Goode,* for plain-
tiff.

*Kerr, Lacey & Scroggie,* for defendants.

CHANDLER, J. Plaintiff, dependent widow of
Frederick Meehan, deceased, who, at the time of his
death, was caretaker of Marion Manor Apartments,
owned and operated by The Maccabees of Detroit,
a defendant herein, appeals in the nature of certi-
orari from an award of the department of labor and
industry denying her compensation for the acci-
dental death of her husband.

Appellant's brief accepts and quotes the follow-
ing facts found by the department, all of which are
supported by the record:

"Plaintiff is the widow and sole dependent of
Frederick Meehan, who was found dead on Febru-
ary 14, 1942, in the kitchen of the basement apart-
ment which he occupied in the Marion Manor Apart-

ments. His death was due to asphyxiation from illuminating gas which had escaped from an open burner on a gas stove in the kitchen.

"Frederick Meehan was employed by The Maccabees of Detroit as a caretaker in the Marion Manor Apartments. As part of the payment for his services in that capacity, he occupied, rent free, a basement apartment in the Marion Manor Apartments. He also attended a furnace in another apartment building in Royal Oak. At about 8 o'clock on the evening of February 13, 1942, he left to attend the furnace in the apartment building in Royal Oak. Apparently nothing further was known of his whereabouts or activities from then until he was seen, about 11:30, in a beer tavern near the Marion Manor Apartments. The proprietor of the tavern testified that plaintiff's decedent was in the tavern for about five minutes and had one glass of beer. Mrs. Clara Bartle, the occupant of the apartment directly above that occupied by the caretaker, testified that she smelled the odor of gas in the hall when she came in about 12:30 on the morning of February 14th, also that she heard plaintiff's decedent's voice coming from his apartment and continued to hear his voice until she went to sleep at 2:30. Plaintiff's decedent was found at about 7 o'clock in the morning in the kitchen of his apartment, sitting in a chair, fully clothed, his cap on the floor, a clean cup on the table directly to his right and his head on his left arm which was resting on the ledge of a cupboard. A coffee pot stood over one of the burners on the gas stove. The burner was turned on but there was no flame. Gas was escaping from that burner. Whether he had gone to bed early in the morning of February 14th and then arisen to prepare coffee or was preparing the coffee before going to bed is immaterial. Neither is it of any significance that he apparently had not banked the furnace fire as usual because the fire was out and the hot water tank was cold. We find that the cause of his death was accidental and not intentional.

We also find, for the reason that he was more or less subject to call, especially to let tenants into the apartment building who had forgotten their keys, and because he had no definite hours of employment, he could while in the Marion Manor Apartments be in the course of his employment any hour of the day or night. Accordingly we find the accidental death happened during the course of his employment.

"Though there is no direct evidence to establish that he intended to prepare coffee, the circumstances under which he was found permit of only one inference, namely, that he was in the act of preparing coffee when he turned on the gas on the stove."

Other facts appearing in the record and mentioned in the respective briefs need not be stated as they are not decisive of the result herein reached.

The only question presented by the appeal is whether the accident resulting in death arose "out of" deceased's employment as required by 2 Comp. Laws 1929, § 8417 (Stat. Ann. § 17.151). An accident, to be compensable, must be one arising "out of" as well as "in the course of" the employment. *Appleford* v. *Kimmel,* 297 Mich. 8. To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom. See *Appleford.* v. *Kimmel, supra; Dent* v. *Ford Motor Co.,* 275 Mich. 39; *Rucker* v. *Michigan Smelting & Refining Co.,* 300 Mich. 668.

With the rule in mind, how can it be said that the death in this case arose out of the employment? Deceased was asphyxiated by illuminating gas while preparing coffee. This act was in no way incidental to the employment; the risk he encountered was entirely divorced from it, and was one to which any

person might be exposed while performing such an act in his home for his personal enjoyment and comfort. Because it appears that he was subject to call at any time to perform a duty as caretaker, the department found that the accident occurred in the course of the employment, but an accident may occur in the course of the employment and not arise "out of" it. *Hopkins* v. *Michigan Sugar Co.,* 184 Mich. 87 (L. R. A. 1916 A, 310); *Appleford* v. *Kimmel, supra.*

The conclusion reached is not altered because of the fact that the accident resulting in death occurred in the building where the employment was performed. Deceased received the use of his apartment as a part of the compensation for his services as caretaker. It was his home and it cannot be said that acts of a personal nature, usually performed as a part of family life, became incidental to the employment because living quarters were furnished in consideration of the services performed. The accident that occurred is no more compensable than it would have been had it occurred in a home occupied by deceased some distance from the apartment house, his place of employment.

We think the case is clearly distinguishable from *Haller* v. *City of Lansing,* 195 Mich. 753 (L. R. A. 1917 E, 324), and other cases cited by appellant.

The award is affirmed, with costs to defendants.

BOYLES, C. J.; and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.